UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTOPHER ALVES,
    Plaintiff,

vs.

ROBERT MURPHY, Superintendent, et al.,
    Defendant's.

C.A.No.05-11090-RBC.

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DOC DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR FIRST AFFIRMATIVE DEFENSE—FAILURE TO STATE A CLAIM

Plaintiff, Christopher Alves, acting pro-se in the above referenced matter, hereby submits this Memorandum of Law in Support of his Opposition to the DOC Defendants' Memorandum of Law in Support of Their First Affirmative Defense—Failure to State a Claim. [1]

INTRODUCTION:

This is a civil rights action filed by Christopher Alves, an involuntarily civilly committed patient, for damages and injunctive relief under 42 U.S.C. §1983, alleging that the defendants' placed him at risk of being harmed by failing to follow certain mandatory protocol's prior to double-bunking him with another patient. Plaintiff seeks enforcement of the terms and conditions of an existing Management Plan, put in place by this court to protect the rights of the civilly-committed, like the plaintiff. See King vs. Greenblatt, 53 F.Supp.2d 117 (D.Mass.1999).

---

[1] Plaintiff's "Opposition" was late filed with this court on and around November 14, 2006, along with plaintiff's request for an enlargement of time in which to submit the enclosed memorandum of law. (On file).

STATEMENT OF RELEVANT FACTS:

Plaintiff, Christopher Alves("Plaintiff"), is an involuntarily civilly-committed patient at the Massachusetts Treatment Center ("MTC"), in the care and custody of the Department of Correction ("DOC"). Complaint, ¶6.

In and around February, 2004, the Shift Commander, defendant John Rull("Rull"), and plaintiff's (then) Treating Therapist, defendant Stephen Corrigan, [2] conducted an interview of the plaintiff for his suitablity for double-bunking. Complaint, ¶27. During the interview, defendant Rull requested of plaintiff whether he would be willing to be double-bunked with resident John MacIntyre. Complaint, ¶28. Plaintiff informed defendant Rull that he did not feel comfortable being double-bunked with resident MacIntyre, and requested that he be double-bunked with either resident's John Parker or Charles Marsh. Complaint, ¶¶29-30. Defendant Rull informed plaintiff that he had no choice in the matter, that he would either agree to be double-bunked with resident MacIntyre or be removed from the general population and placed in the Treatment Center's Minimum Privilege Unit("MPU"), pending behavioral proceedings. Complaint, ¶31.

In and around May, 2004, plaintiff informed defendant Rull that for several nights he would awake to find his roommate, resident MacIntyre lifting up his bed sheets to look at his body while he was sleeping, and felt that resident MacIntyre was putting medication in his food to attempt to drug him. Complaint, ¶32.

---
[2] Because defendant Corrigan has since changed his employment and left no forwarding address, plaintiff has been unable to serve him with a copy of his Complaint and Summons. However, as it appears from the Marshals Service recent return, it would appear that defendant Corrigan was served with a copy of the Complaint and Summons, as of November 22, 2006. (On file).

Plaintiff was subsequenetly moved to another unit to a single room "temporarily," then re-double-bunked with another resident. Complaint, ¶33.

The Treatment Center has a "Housing and Double Bunking Policy," which has a two-phase system prior to double-bunking of any residents. Complaint, ¶¶23-24. <u>Phase-I</u> requires the defendant's "to attempt to relieve the overcrowding by transferring all residents still serving criminal sentences back to the prison system by the Transfer Board Process." Complaint, ¶25. <u>Phase-II</u> required an administrative official or his designee, together with a member of the resident's clinical treatment team, "to conduct an interview of each resident's compatibility for double-bunking, ranging from a variety of issues, i.e., security, enemy issues, aggressiveness, vulnerablity to victimization, compliance with treatment/rules, medical and mental health issues, religious beliefs, with consideration of the resident's request for assignment being preference." Complaint, ¶24 & Exhibit-2.

## ARGUMENT

The Lenient standards by which a Complaint is to be measured on a motion to dismiss for failure to state a claim are well-settled. To well-settled for discussion. The allegations are taken as true, doubts are resolved in favor of the complainant, and the motion must be denied unless it is certain that no set of provable facts could entitle the plaintiff to relief. <u>Andujar vs. City of Boston</u>, 760 F.Supp. 238 (D.Mass.1991). See <u>Conley vs. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Bergeson vs. Franchi</u>, 783 F.Supp. 713 (D.Mass.1992). A complaint should not be dismissed simply because it alleges improbable facts. <u>reardon vs. Comm'r. of Corr.</u>, 20 Mass.App.Ct. 946, 947 (1985). The rule requires a short and plain statement of claims

-4-

showing that a pleader is entitled to relief. Rule 8(a)(1), Fed.-R.Ci.P.; see also Hughes vs. Rowe, 449 U.S. 5, 19 (1980).

### I. PLAINTIFF'S RELIEF UNDER 42 U.S.C. SECTION 1983.

It is conceded, in part, that a claim under 42 U.S.C. §1983 has two essential elements: (1) the challenged conduct must be attributable to a person acting under color of state law; and 92) the conduct must have denied the plaintiff of a right secured by the United States Constitution or by federal law. Soto vs. Flores, 103 F.3d 1056, 1061 (1st. Cir.), cert. denied, 519 U.S. 819 (1997). The second element requires the plaintiff to prove "that the defendant's conduct was a cause in fact of the alleged deprivation." Id. at 1062. "[G]enerally, a public official/employee acts under color of state law while acting in his/her official capacity while exercising his/her responsibilities pursuant to state law." West vs. Atkins, 487 U.S. 42, 50 (1998); accord, Monroe vs. Pape, 365 U.S. 167, 184 (1961). Therefore, there can be no doubt that the defendant's were acting under color of state law for the purpose of this argument. The question becomes whether the defendant's deprived the plaintiff of any alleged federally protected right.

### A. Defendant's Conduct Clearly Violated Plaintiff's Federally Protected Rights, As Secured Under The Existing Management Plan.

The the federal consent decree litigation, Complaint, ¶¶ 10-19, the District Court held that it's "decision does not preclude [Treatment Center residents] from challenging events on the basis of constitutional or other protected rights." King, 53 F.Supp.2d at 137. Clearly, a Treatment Center resident is not

-5-

precluded from challeging a specific event or wrong that occurred to him. See, e.g., Cameron vs. Tomes, 990 F.2d 14 (1st Cir. 1993). Likewise, the District Court did not preclude Treatment Center residents from challenging constitutional wrongs committed after the termination of the consent decrees or, from bringing an action to enforce the terms and conditions of the existing Management Plan. King, 53 F.SUpp.2d at 137.

In the case at bar, it is the defendants', not the plaintiff, who has construed his Complaint as challenging double-bunking at the Treatment Center, per se, as being unconstitutional. To the contrary, plaintiff clearly alleges that, defendants', since the implementation of double-bunking at the Treatment Center, have continually disregarded the mandatory protocol's prior to double bunking residents(Complaint, ¶38); knowingly double-bunk known homosexuals with other known homosexuals, causing an increase in sexual activity among residents while double-bunked(Complaint, ¶¶40-41); and fail to investigate into residents complaints while double-bunked with uncompatible roommates(Complaint, ¶39). All of which has increased unauthorized sexual activity among residents, physical altercations, strongarming, and extortion(Complaint, ¶46). Moreover, defendants' knowingly forced plaintiff, an adult male who projects adolescent characteristics(Complaint, ¶37), against his protests, to be double-bunked with another resident who was originally convicted of raping an adolescent male and is a known homosexual(Complaint, ¶¶29-31), causing plaintiff to be subjected to sexual harassment while double-bunked(Complaint, ¶32). 3/ Priosn officials may be found deliberately indifferent

---

[3] The "protocol's" for double-bunking, among other criteria, prohibit double-bunking of aggressive residents with residents who are "susceptibelt

-6-

if they fail to isolate prisoners who are obvious victims, farmer vs. Brennan, ___U.S.___, 114 S.Ct. 1970 (1994)(placing a young, non-violent, feminine-appearing transsexual in general population in a high-security prison with a sex offender in an unsupervised holding cell); Stokes vs. Delcambre, 710 F.2d 1120, 1125 (5th Cir.1983)(failure to separate young white males), or if they place a prisoner in a situation of danger from others who are known to be aggressive and violent. Redman vs. City of San Diego, 942 F.2d 1435, 1444 (9th Cir.1991)(en banc)(double celling an "aggressive homosexual" with another inmate), cert. denied, 112 S.Ct. 972 (1992).

   B. Defendant's Conduct in Treating Plaintiff Differently, From Thos Residents Committed Under the Pre-Existing Versions of G.L. c.123A, Clearly Violated Plaintiff's Federally Protected Rights, As Secured Under the Existing Management Plans.

The equal protection clause seeks to ensure that similarly situated people are treated alike. Pearson vs. Fair, 935 F.2d 401, 411 (1st Cir.1991), citing City of Cleburne vs. Cleburne Living Center, 473 U.S. 432, 439 (1985). To prevail on an equal protection claim, a plaintiff nneeded to allege facts indicating that, "compared with others similarly situated, [the plaintiff] was selectively treated...based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz vs. Rogato, 60 F.3d 906, 909-10 (1st Cir.1995)(emphasis added; citations omitted).

to victimization," and require defendant's "to give residents requests for assigned roommates preference." (Complaint, at Exhibit-1).

-7-

The formula for determining whether individuals or entities are "similarly situated" for equal protection purposes is not always susceptible to precise demarcation. See <u>Coyne vs. City of Somerville</u>, 972 F.2d 440, 444-45 (1st Cir.1992)("[t]he 'line between sufficient facts and insufficient conclusions is often blurred'")(citation omitted). As the first circuit has explained:

> "[T]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasonable analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples."

<u>Dartmouth Review vs. Dartmouth Coll.</u>, 889 F.2d 13, 19 (1st Cir. 1989)(citation omitted); see also <u>Rodriguez-Cuervos vs. Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 21 (1st Cir.1999). Thus, it was essential that the plaintiff allege, inter alia, that he and the existing civil population were similarly situated "'in all relevant aspects.'" <u>Dartmouth Review</u>, 889 F.2d at 19(citation omitted; emphasis added).

In the context of the present motion, and taking the allegations of the Complaint to be true, the plaintiff has alleged a viable Equal Protection Claim. First, the plaintiff has alleged that, as a new civil commit under c.123A, he is being deprived of certain privileges and personal luxuries afforded to the existing resident population, committed under the former versions of c.123A. Complaint, ¶¶44-45. In essence, the plaintiff has pleaded that new civil commits are treated more harshly than former civil commits. And therefore, contrary to defendant's position, has stated a viable equal protection claim. See

-8-

Interboro Institute, Inc. vs. Maurer, 956 F.Supp. 188, 199-200 (N.D.N.Y. 1997).

### II. PLAINTIFF IS ENTITLED TO AN INJUNCTION REQUIRING THE DEFENDANT'S TO RELIEVE THE OVERCROWDING AT THE TREATMENT CENTER, BY TRANSFERRING ALL INMATES STILL SERVING CRIMINAL SENTENCES BACK TO THE STATE'S PRSION SYSTEM.

Here, it is conceded that, this court, upon vacating the previous consent decrees, approved and allowed the DOC to implement all aspects of the Management Plan, with the court having full knowledge of the introduction of non-civilly committed state prison inmates("SPI's"), as well as providing the Commissioner with the discretion to utilize space at the Treatment Center as it becomes available to relieve the overcrowding in the state's correctional facilities. King, 53 F.Supp.2d at 125. However, what the defendant's fail to point out, is that, the Management Plan did not contemplate the reenactment of c.123A [4], and the potential for overcrowding with the increase in the population with newly committed residents.

Statute 1990, chapter 150, Section 104 provides, in relevant part that: "the Commissioner of Correction may utilize available space at the Treatment Center to address overcrowding at other facilities." King, 53 F.Supp.2d at 125. With the reenactment of new civil commits and the increase in resident population, per statute, the Commissioner no longer has any discretion to utilize space at the Treatment Center that is no longer available. Id.

---

[4] See Commonwealth vs. Bruno, 432 Mass. 489 (Mass.2000).

Additionally, defendant's own Housing and Double Bunking Plan, requires defendant's "to attempt to relieve overcrowding prior to implementing double bunking at the Treatment Center, by transfering all SPI's still serving criminal sentences back to the prison system, via the Transfer Board process." Complaint, ¶25 & Exhibit-1.

### III. DEFENDANTS' ASSERTION TO QUALIFIED IMMUNITY.

The principle of qualified immunity is to protect those who might otherwise be deterred from official duties for fear that an innocent mistake might create personal liability. Joyce vs. Town of Tewksbury, 112 F.3d 19 (1st Cir.1997). Accordingly, those who knowingly violate the law are not protected by the cloak of qualified immunity. malley vs. Briggs, 475 U.S. 335, 341 (1986).

The qualified immunity analysis hinges on whether a right was clearly established at the time the right was established. Anderson vs. Creighton, 483 U.S. 635, 640 (1987); Duarte vs. Healy, 405 Mass. 43 (1989). Government officials are presumed to be aware of the law governing their conduct. Ward vs. County of San Diego, 791 F.2d 1329, 1332 (9th Cir.), cert. denied, 483 U.S. 1020 (1987). Therefore, if the legal right was clealry established, knowledge of the law will be presumed.

In the case at bar, the defendant's have failed to set forth a sufficient basis to support an entitlement to qualified immunity. The case law they cite stands for general propositions and merely begs the relevant factual and legal questions. For example, defendant's attempt to assert an entitlement to qual-

-10-

ified immunity by arbitrarily designating plaintiff's claims as amounting to one challenging the constitutionality of double bunking in general. To the contrary, as argued in Section I(A) above, the Complaint clearly puts forth specific facts , other than mere general conclusory allegations. In these circumstances, a reasonable official would have known that St.1990, c.150, §104 inferred no discretion to utilize space at the Treatment Center with the increased population; the Management Plan, at a minimum, required defendant's to attempt to relieve the overcrowding at the Treatment Center, before implementing double bunking; and to ensure that each resident is individually gauged for assessment of compatibility for double-bunking.

If a defendant directly violates a court judgment or order, they have violated "clearly established" law. Stone vs. Herman, 983 F.2d 107, 109-10 (8th Cir.1993); Cortes-Quinones vs. Jiminez-Nettleship, 842 F.2d 556, 561-62 (1st Cir.1988), cert. denied, 488 U.S. 823 (1988). See Kaminsky vs. Rosenblum, 737 F.Supp. 1309, 1319 (S.D.N.Y. 1990)(federal court consent judgment may serve to make officials "particularly aware of the legal requirements"), appeal dismissed, 929 F.2d 922 (2d Cir.1991). A law can be "clearly established" by decisions of the Supreme Court or of the State or Federal Courts in the jurisdiction where the acts occurred. Francis vs. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989). Decisions from other jurisdictions may also establish the law. Frey vs. Masters, 493 U.S. 977 (1989); Weber vs. Dell, 804 F.2d 796, 803-04 (2d Cir.1986), cert. denied, 483 U.S. 1020 (1987). It is also no defense that the defendant's did not actually know about the law. Elliott vs. Thomas, 937 F.2d 338, 344

-11-

(7th Cir.1991)(defendants actual knowledge of governing legal standards is irrelevant), cert. denied, 112 S.Ct. 1242 (1992); Chandler vs. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991)(fact that neither defendant "understood" that their actions were illegal did not establish qualified immunity).

The general rule is that "[q]uestions of immunity should be resolved at the earliest possible stage of the litigation so that an officer who is immune from suit will not have to prove through a lengthy trial to establish that fact." Dempsey vs. Town of Brighton, 749 F.Supp. 1215, 1227 (W.D.NY. 1990). However, qualified immunity jurisprudence instructs that the standard fro determining qualified immunity in federal court, "was designed to facilitate resolution of the defense on a motion for summary judgment." See Interboro Institute, Inc., 956 F.Supp. at 201, citing Warren vs. Dwyer, 906 F.2d 70, 74 (2d Cir. 1990). The present motion is made pursuant to Fed.R.Civ.P. 12(b)(6), and prior to any discovery in the case. Accordingly, the defendant's assertion to qualified immunity should be denied. Id.

**IV. THE COMPLAINT DOES NOT SEEK TO RECOVER MONEY DAMAGES AGAINST THE DEFENDANT'S IN THEIR OFFICIAL CAPACITIES UNDER 42 U.S.C. SECTION 1983.**

Here, it is conceded, in part, that state officials acting in their official capacities are not "persons" within the meaning of §1983 for purposes of money damages. See Will vs. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). However, the Complaint against the defendant's in their official capacities does not seek money damages. Cf. Kentucky vs. Graham, 473 U.S. 159, 167 (1985).

-12-

Dated: 1/5/07.                    Respectfully submitted,

                                  C. Alves
                                  _____
                                  Christopher Alves, #M-81271
                                  Plaintiff/Pro-se
                                  Mass. Treatment Center
                                  30 Administration Rd.
                                  Bridgewater, Mass. 02324


**CERTIFICATE OF SERVICE**

   I, Christopher Alves, hereby certify's that I have today served a true and accurate copy of the within filing on counsel of record for the defendant's, by institutional mail.


Dated: 1/5/07.            C. Alves
                          _____
                          Christopher Alves, #M-81271
                          Plaintiff/Pro-se